The Journal of Living Publishing Corporation v. Commissioner.
Journal of Living Publ. Corp. v. Commissioner
Docket No. 3428.
United States Tax Court
1944 Tax Ct. Memo LEXIS 191; 3 T.C.M. (CCH) 655; T.C.M. (RIA) 44224; July 4, 1944
*191 Maurice A. Haas, C. P. A., 122 E. 42nd St., New York 17, N. Y., for the petitioner. Francis X. Gallagher, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined deficiencies against The Journal of Living Publishing Corporation for the fiscal year ended May 31, 1941, as follows: Income tax
$516.42
Declared value excess profits tax
477.51
eXcess profits tax
287.00
The single issue is whether the respondent properly disallowed the sum of $3,617.47 as a deduction from gross income on the ground that it represented a capital expenditure. Most of the facts are contained in a stipulation which is incorporated herein by reference. A summary of the stipulated facts and additional facts otherwise found from the record are set forth as our findings. Findings of Fact The petitioner is a corporation, organized in 1935 under the laws of New York. Its return for the year in controversy was filed with the Collector of Internal Revenue for the third district of New York. The petitioner is the publisher of a monthly magazine of general circulation known as "Journal of Living" and also publishes from time to time books and pamphlets on the *192 subject of nutrition. The petitioner's method of maintaining the circulation structure of its magazine is to mail to each subscriber, just prior to the expiration of his subscription, a reminder that his subscription will expire on a certain date, accompanied by a request for a renewal. This is followed by a second reminder, with a second request for renewal. These mailing slips are termed "efforts." On May 31, 1937, the number of subscribers to the "Journal of Living" was 13,792. On May 31, 1938, this number was 25,892, and on May 31, 1939, 31,800. By September 30, 1939, the number of subscribers had dropped to 18,901. In view of this large decrease, a meeting of the petitioner's circulation department was held at which it was decided to increase the number of "efforts" in order to regain the subscribers who had been lost. Thereafter, instead of making only two "efforts" in each case, as it had in the past, the petitioner continued making the "efforts" for four or five months beyond the expiration date. Bv May 31, 1940, the number of subscribers had increased to 29,421. During June of that year a second meeting was held, at which it was decided that since the subscription list *193 had not yet been restored to its previous level, the petitioner would circularize its book customers who were not at that time subscribers to the magazine, and, in addition, continue to circularize its magazine subscribers. This decision was carried out, and as a result of this increased activity, the subscription list rose to 46,726 as of May 31, 1941. During the taxable year in controversy, the petitioner did not hold any subscription contest, indulge in any special subscription campaigns, or employ any solicitors to obtain new subscriptions. The petitioner's circulation and promotion expenses were $13,124.22 for the year ended May 31, 1939; $13,322.22 for the year ended May 31, 1940; and $17,904.45 for the year ended May 31, 1941. The last amount stated was composed of the following items: "Promotion expenses (covering sub-
scriptions to magazine and sale of
books)
$10,317.40
Promotion postage
7,587.05"
The petitioner does not maintain any system of cost or unit accounting through or by which it is possible to determine either (a) cost of renewal subscriptions; (b) cost of obtaining new subscriptions to replace subscriptions not renewed; or (c) cost of obtaining new *194 subscriptions which increase the circulation. The total subscriptions as of the end of the year involved may be classified as follows: "Subscriptions not expiring during year
2,628
Renewals not increasing circulation
12,058
New subscriptions to replace loss in cir-
culation structure in fiscal year ended
May 31, 1940
2,379
New subscriptions to replace subscrip-
tions lost in current year
14,732
New subscriptions increasing circula-
tion
14,929
Total
46,726"
The petitioner's gross income for the year involved was $356,418.67, received from the sources and in the amounts stated as follows: "Subscription income
$103,812.58
Book sales
70,096.15
binders
13.90
Discounts
1,479.43
Radio income
176,367.74
Magazine advertising
4,648.87
Total
$356,418.67"
Of the total amount of $17,904.45 deducted by the petitioner as subscription and promotion expenses, the respondent disallowed $3,617.47 on the ground that such sum represented a capital expenditure. Opinion ARUNDELL, Judge: The petitioner contends that the entire amount claimed by it as circulation and promotion expenses is deductible as an ordinary and necessary business expense, under section 23 (a) (1) *195 of the Internal Revenue Code. The respondent contends that $3,617.47 of the total claimed represents a capital expenditure and hence is not deductible. The circulation of a magazine or newspaper is an intangible capital asset which must be continually supported by bringing in new subscriptions to replace those which are continually expiring. The cost of so supporting the circulation is an ordinary and necessary business expense, but the cost of building up or establishing a circulation structure is a capital expenditure, and is not deductible in determining the publisher's taxable income. Perkins Bros. Co. v. Commissioner, 78 Fed. (2d) 152; Public Opinion Publishing Co. v. Jensen, 76 Fed. (2d) 494; Successful Farming Publishing Co., 23 B.T.A. 150 [Dec. 6949], affirmed sub nom. Meredith Publishing Co. v. Commissioner, 64 Fed. (2d) 890, certiorari denied 290 U.S. 646. If the expenditure is made for the purpose of supporting the circulation structure, the incidental fact that the number of subscribers is hereby increased will not *196 make it a capital expenditure. It is the character of the expenditure which is determinative and that is dependent upon its general purpose, rather than upon an incidental result. Perkins Bros. Co. v. Commissioner, supra. The petitioner contends that it was not engaged in an effort to increase the circulation structure of its magazine, but was attempting to support it by bringing in new subscriptions to replace those which had been lost, and that the large increase in its circulation was simply an unexpected result of its effort to restore its circulation to its former level. It relies on Perkins Bros. Co. v. Commissioner, supra, in support of its contention. In that case the petitioner was the publisher of a newspaper having a circulation of 55,000. With this circulation, the petitioner's territory was "saturated," that is, its circulation had reached a point where it was not necessary or desirable to increase the circulation. The evidence showed without dispute that the petitioner did not attempt to increase its circulation, but carried on only the normal business of soliciting subscriptions for the purpose of keeping *197 up the circulation structure which had already been established. There was testimony to the effect that had it been impossible to get any additional circulation whatever, it would still have been necessary to expend all that was paid out to support its established circulation structure. During the years in controversy, the petitioner's circulation increased in the amount of 5,521 and 3,765, respectively. The court held that the expenditures were incurred for the purpose of maintaining the petitioner's circulation structure, and that the increase was merely an incidental result. In the present case, there is no evidence that the circulation of the petitioner's magazine had reached a point beyond which it would be neither desirable nor profitable to go. Indeed, it appears that the income from the magazine subscriptions constituted a large part of the petitioner's entire income for the year, and that a larger circulation would be desirable from a financial viewpoint. Furthermore, the petitioner has not shown by adequate proof that the total amount expended by it during the taxable year was necessary to support its existing circulation structure. The evidence shows that at the end of *198 its fiscal year 1939, the petitioner had 31,800 subscribers and that during that year it spent $13,124.22 for circulation and promotion expenses. By September 30, 1939, the number of subscribers had dropped to 18,901. As a result of an intensified effort to get back the subscribers who had been lost, the petitioner succeeded in restoring the circulation structure to 29,421 as of May 31, 1940, or 2,379 less than it had been at the close of the previous year, at an increased cost of only $198. During the year in controversy, however, the petitioner's expenses rose from $13,322.22 to $17,904.45, an increase of 34 per cent, while its circulation rose from 29,421 to 46,726, a gain of 58 per cent. The petitioner has offered us no evidence to show why such a large increase in its expenditures was necessary to support its circulation structure. It is certain that as a result of its increased activities and expense the petitioner acquired a large and valuable increase in its capital assets, and that its earning power was thereby increased. In the absence of further proof, we cannot say that a part, at least, of this expenditure was not made for the purpose of so increasing the circulation *199 structure. While a part of the petitioner's expenditure was thus used to build up its circulatior structure and is a capital expenditure, the balance is properly deductible as an expense incurred in supporting its circulation structure. The cost of securing new subscriptions should be allocated between expense and capital according to the number of subscriptions required to replace those lost during the year and the number by which the circulation structure was increased. Successful Farming Publishing Co., supra.The respondent has done this in his determination of deficiency. He has allowed the petitioner the sum of $14,286.98 as representing the cost of supporting its circulation structure, or almost $1,000 more than it spent in the preceding year for the same purpose. The balance he determined to be a capital expenditure, and, on the record, we cannot say that he was in error in so doing. His determination must recordingly be sustained. Decision will be entered for the respondent.